IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 13-6186

_____

UNITED STATES OF AMERICA,

Appellee

v.

JEFFREY CISSEL NEUHAUSER,

Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

(THE HONORABLE ALEXANDER WILLIAMS, JR.,
UNITED STATES DISTRICT JUDGE)

_____

BRIEF OF APPELLANT

_____


Respectfully submitted,

JAMES WYDA
Federal Public Defender
  for the District of Maryland

SUSIE HENSLER
Appellate Attorney
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland  21201
(410) 962-3962

**TABLE OF CONTENTS**

**Page**

Jurisdictional Statement. . . . . . . . . . . . . . . . . . . . 1

Issue Presented.. . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case.. . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . 2

Summary of Argument . . . . . . . . . . . . . . . . . . . . . 5

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

MR. NEUHAUSER'S FIVE-YEAR TERM OF SUPERVISED RELEASE COMMENCED ON
JUNE 6, 2007, THE DATE HIS ORIGINAL SENTENCE OF IMPRISONMENT
EXPIRED, AND WAS NOT TOLLED BY HIS DETENTION PURSUANT TO A CIVIL
STATUTE.. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.   Standard of Review. . . . . . . . . . . . . . . . 5

     B.   Mr. Neuhauser's Sentence of Supervised
        Release Commenced on June 6, 2007, When
        His Criminal Sentence of Imprisonment Expired.. . . . . 6

     C.   Consistent with a Recent Ruling of the
        Ninth Circuit, This Court Should Find
        that Mr. Neuhauser's Term of Supervised
        Release Was Not Tolled as a Result of His
        Detention Pursuant to the Adam Walsh Act. . . . . . 10

     D.   The Reasoning of United States v. Johnson Is
        Not Dispositive on this Issue.. . . . . . . . . . . 14

     E.   Equitable Considerations Weigh Heavily in
        Favor of Termination of Mr. Neuhauser's
        Supervised Release on June 6, 2012... . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . 18

REQUEST FOR AN ORAL ARGUMENT. . . . . . . . . . . . . . . . .  18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page**

### Cases

*Agyeman v. INS*, 296 F.3d 871 (9th Cir. 2002). . . . . . . . . . 9

*Cummings v. Missouri*, 71 U.S. 277 (1867) . . . . . . . . . . 7

*Doe v. Washington County*, 150 F.3d 920 (8th Cir. 1998). . . . . 9

*Greig v. Goord*, 169 F.3d 165 (2d Cir. 1999). . . . . . . . . . 9

*Kerr v. Puckett*, 138 F.3d 321 (7th Cir. 1998). . . . . . . . . 9

*Kolocotronis v. Morgan*, 247 F.3d 726 (8th Cir. 2001). . . . . . 9

*LaFontant v. INS*, 135 F.3d 158 (D.C. Cir. 1998). . . . . . . . 9

*Ojo v. INS*, 106 F.3d 680 (5th Cir. 1997). . . . . . . . . . . 9

*Page v. Torrey*, 201 F.3d 1136 (9th Cir. 2000). . . . . . . . . 9

*Tobey v. United States*, 794 F. Supp. 2d 594 (D. Md. 2011). . . 14

*Troville v. Venz*, 303 F.3d 1256 (11th Cir. 2002). . . . . . . 8-9

*United States v. Comstock*, 130 S. Ct. 1949 (2010). . . . . . . **8**

*United States v. Comstock*, 627 F.3d 513 (4th Cir. 2010). . . . . **8**

*United State v. Garcia-Rodriguez*, 640 F.3d 129 (2011). . . . . 13

*United States v. Hager*, 721 F.3d 167 (4th Cir. 2013). . . . . . 5

*United States v. Johnson*, 529 U.S. 53 (2000). . . . . . 4,5,14-15

*United States v. Mosby*, 719 F.3d 925 (8th Cir. 2013). . . . . 14

*United States v. Turner*, 689 F.3d 1117 (9th Cir. 2012). 10-13,17

### Constitutional Provisions, Statutes and Rules

18 U.S.C. § 2252(a)(1). . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 2423(b) . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3583(e) . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3624 . . . . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 4248 . . . . . . . . . . . . . . . . . . . 1,11

28 U.S.C. § 1915(h) . . . . . . . . . . . . . . . . . . . 9

## JURISDICTIONAL STATEMENT

The district court had jurisdiction in this case under 18 U.S.C. § 3231 and 18 U.S.C. § 3583(e).  The court's judgment is final because it terminated litigation on the merits of all issues before the district court. Mr. Neuhauser filed a timely notice of appeal on January 30, 2013.  *See* J.A. at 125.  This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUE PRESENTED

I.  DID THE DISTRICT COURT ERR BY DENYING MR. NEUHAUSER'S MOTION TO TERMINATE HIS FIVE-YEAR TERM OF SUPERVISED RELEASE AS OF JUNE 6, 2012, FIVE YEARS FROM THE EXPIRATION OF HIS SENTENCE OF IMPRISONMENT, GIVEN THAT HE WAS HELD IN CIVIL CUSTODY AFTER THAT DATE?

## STATEMENT OF THE CASE

On November 15, 1999, Jeffrey Cissel Neuhauser was sentenced by a district court judge in the District of Maryland to 109 months imprisonment and five years supervised release.  J.A. at 18.  The Bureau of Prisons (hereinafter "BOP") thereafter informed him that his release date was June 6, 2007.  J.A. at 29. Fifteen days before Mr. Neuhauser's scheduled release, the government instituted a civil action seeking to commit him pursuant to the Adam Walsh Child Protection and Safety Act of 2006, 18 U.S.C. § 4248 (hereinafter "the Adam Walsh Act").  *See* J.A. at 30.  For that reason, Mr. Neuhauser was held in administrative custody for four and a half years pending the outcome of that proceeding.  J.A. at 126.  Mr. Neuhauser was

finally released from custody on February 3, 2012 after the government's Adam Walsh Act case was dismissed.  J.A. at 43-44.

On June 6, 2012, Mr. Neuhauser filed a motion to terminate supervised release on the grounds that his five year term of supervised release commenced on the date his sentence of imprisonment expired, June 6, 2007, and was not tolled by civil detention in BOP custody. J.A. at 9.  The court denied the motion after a hearing.  J.A. at 124.  This appeal followed.

<u>**STATEMENT OF FACTS**</u>

On November 15, 1999, Jeffrey Cissel Neuhauser was sentenced to a term of imprisonment of 109 months and a five year term of supervised release after his guilty plea to charges of interstate travel with intent to engage in sex with a minor, in violation of 18 U.S.C. § 2423(b), and distribution of a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(1).  J.A. at 18.

While he was in their custody, the Bureau of Prisons ("BOP") informed Mr. Neuhauser that his release date was June 6, 2007.  *See* J.A. at 28-29.  However, on May 22, 2007, fifteen days before his scheduled release date, the government instituted a civil action seeking to certify Mr. Neuhauser as a sexually dangerous person pursuant to the Adam Walsh Act.  *See* 30.

-2-

On Mr. Neuhauser's original release date, June 6, 2007, at 12:00 p.m., the BOP processed Mr. Neuhauser for "Good Conduct Time Release." *See* J.A. at 46. There is also an entry indicating that at 12:01 p.m. Mr. Neuhauser was "civilly committed" pursuant to the Adam Walsh Act. *See id.*[1] At 4:00 p.m., the BOP released Mr. Neuhauser was "for admission change," and at 4:02 p.m admitted him for "Walsh Act review." *See id.* The BOP also moved Mr. Neuhauser to another housing unit within the correctional facility on that day. *See* J.A. at 47.

On January 19, 2012, over four and a half years after his sentence of imprisonment expired, the Eastern District of North Carolina refused to certify him for civil commitment. *See United States v. Neuhauser*, 2012 U.S. Dist. LEXIS 7008 (E.D.N.C. Jan. 19, 2012), J.A. at 126. After a hearing and a bench trial, the district court found that the government failed to establish that Mr. Neuhauser was sexually dangerous to others pursuant to that statute. *See id.* The court entered a judgment in Mr. Neuhauser's favor the next day and the district court ordered his release. *See* J.A. at 43-44. Mr. Neuhauser was released from FCI-Butner on February 3, 2012. *See* J.A. at 48.

---

[1]     The exact entry referenced herein reads "civil commit, Walsh Act." J.A. at 46.

-3-

On June 6, 2012, Mr. Neuhauser filed a motion to terminate supervised release.  J.A. at 5, 9.  He argued that his five-year term of supervised release commenced on June 6, 2007, the date his term of imprisonment expired.  J.A. at 9.  He argued that since his detention pursuant to the Adam Walsh Act was civil, rather than the result of a criminal conviction, it did not toll his term of supervised release.  J.A. at 9-15.

On September 14, 2012, the district court held a hearing on the issue.  J.A. at 6.  On January 28, 2013, the court denied the motion to terminate supervision.  J.A. at 7, 124.  The court relied heavily on the plain language of 18 U.S.C. § 3624, which provides that a "term of supervised release commences on the day the person is released from imprisonment."  J.A. at 118-19.  The court interpreted "release from imprisonment" to mean release from any type of confinement, citing *United States v. Johnson*, 529 U.S. 53 (2000).  J.A. at 118-19.  The court found that Mr. Neuhauser's "release" did not occur until February 3, 2012.  J.A. at 119.  The district court also found that the purpose of supervised release–"to help persons in Defendant's position re-enter society"–would not be served by acknowledging that supervised release commenced on the earlier date.  J.A. at 7.

-4-

## SUMMARY OF ARGUMENT

The district court erred in denying Mr. Neuhauser's motion to terminate supervised release as of June 6, 2012. Mr. Neuhauser's criminal sentence expired on June 6, 2007, and he was held in civil detention after that date pending the outcome of Adam Walsh Act proceedings. Consistent with a recent ruling of the Ninth Circuit, this Court should find that Mr. Neuhauser's five year term of supervised release commenced on June 6, 2007 and was not tolled because he was not "imprisoned in connection with a conviction" during his civil detention. The Supreme Court's ruling in *United States v. Johnson* has no bearing on this analysis. Furthermore, equitable principles, including the rule of lenity, favor the Appellant.

## ARGUMENT

**I.    MR. NEUHAUSER'S FIVE-YEAR TERM OF SUPERVISED RELEASE COMMENCED ON JUNE 6, 2007, THE DATE HIS ORIGINAL SENTENCE OF IMPRISONMENT EXPIRED, AND WAS NOT TOLLED BY HIS DETENTION PURSUANT TO A CIVIL STATUTE.**

**A.    Standard Of Review.**

This Court reviews questions of statutory construction or interpretation de novo. *United States v. Hager*, 721 F.3d 167 (4th Cir. 2013)(citations and quotations omitted).

**B.   Mr. Neuhauser's Sentence of Supervised Release Commenced on June 6, 2007, When His Criminal Sentence of Imprisonment Expired.**

A criminal defendant's release from custody, and the general bounds of any subsequent term of supervised release, are governed by 18 U.S.C. § 3624.  Pursuant to subsection (a) of that statute, "[a] prisoner shall be released by the Bureau of Prisons *on the date of the expiration of the prisoner's term of imprisonment*, less any time credited toward the service of the prisoner's sentence as provided in subsection (b)." (emphasis added).  Subsection (e) of that statute provides that "[a] prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court." The statute further reads that "*[t]he term of supervised release commences on the day the person is released from imprisonment* and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release." (emphasis added)

Mr. Neuhauser's "inmate history" records show that the BOP "released" him on June 6, 2007, as scheduled.  *See* J.A. at 46.

-6-

He was not serving any criminal sentence from that point forward. The BOP then apparently re-admitted as an Adam Walsh Act detainee. *See id.* The fact that he was transferred to a different unit on that date also indicates that he was no longer serving a "term of imprisonment" within the meaning of Section §3624(a). *See* 47.

Even though the BOP retained custody of Mr. Neuhauser from June 6, 2007, until February 3, 2012, this civil detention did not constitute "imprisonment" within the meaning of Section § 3624(e). As an initial matter, Mr. Neuhauser was no longer serving a term of imprisonment in connection with his original conviction, as his sentence expired on June 6, 2007. Mr. Neuhauser's Adam Walsh Act detention was not an extension of his original sentence. To hold otherwise would give rise to an *Ex Post Facto* violation. *See Cummings v. Missouri*, 71 U.S. 277, 325-26 (1867) ("by an ex post facto law is meant one which imposes a punishment for an act which was not punishable at the time it was committed; *or imposes additional punishment to that then prescribed*")(emphasis added); *United States v. Parriett*, 974 F.2d 523, 525 (4th Cir. 1992).

The Adam Walsh Act is a civil statute, not a criminal one. The title of the statute—"*civil* commitment of a sexually dangerous predator"—evinces as much. Furthermore, this Circuit

-7-

and others have already determined that detention under the Adam Walsh Act is not criminal in nature. *See, e.g., United States v. Comstock*, 627 F.3d 513, 522 (4th Cir. 2010). In *United States v. Comstock*, 130 S. Ct. 1949 (2010), the Supreme Court emphasized the non-criminal nature of the Adam Walsh Act, characterizing the statute as a "federal *civil*-commitment program," which "constitutes a modest addition to a set of federal prison-related mental-health statutes that have existed for many decades." 130 S. Ct. at 1958 (emphasis added).

Cases arising under the Prison Litigation Reform Act ("PLRA") support the argument that individuals detained under the Adam Walsh Act are no longer *imprisoned*, even if they remain in the *custody* of the BOP.

In *Troville v. Venz*, 303 F.3d 1256, 1257-58 (11th Cir. 2002), the plaintiff, an individual subject to civil commitment as a sexually violent predator pursuant to a Florida statute, challenged the use of restraints on detainees during transportation, the lack of a grievance procedure for detainees, and the use of the confinement wing for "lock-down." The Eleventh Circuit held that "the PLRA's restrictions on actions brought by prisoners do not apply to civilly committed detainees." The court held that the term "prisoner" "means persons incarcerated for violations of criminal law or the terms

-8-

and conditions of parole, probation, pretrial release, or diversionary program." *Id.* at 1260 (quoting 28 U.S.C. § 1915(h))(internal quotation marks omitted). The Eleventh Circuit further explained that its decision conformed with the six other federal circuit courts that had addressed this issue. *Id.* at 1260 (citing *Kolocotronis v. Morgan*, 247 F.3d 726 (8th Cir. 2001); *Page v. Torrey*, 201 F.3d 1136, 1139 (9th Cir. 2000), *Agyeman v. INS*, 296 F.3d 871 (9th Cir. 2002); *LaFontant v. INS*, 328 U.S. App. D.C. 359, 135 F.3d 158, 165 (D.C. Cir. 1998); *Ojo v. INS*, 106 F.3d 680, 682 (5th Cir. 1997); *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999); *Doe v. Washington County*, 150 F.3d 920, 924 (8th Cir. 1998); and *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998)).

Mr. Neuhauser, like the complainant in *Troville*, was held administrative custody during the pendency of Adam Walsh Act proceedings and was no longer serving a criminal sentence. For that reason, *Troville* requires a finding that Mr. Neuhauser was not imprisoned during that period even though he was in BOP custody.

-9-

**C.    Consistent with a Recent Ruling of the Ninth Circuit, This Court Should Find that Mr. Neuhauser's Term of Supervised Release Was Not Tolled as a Result of His Detention Pursuant to the Adam Walsh Act.**

Adam Walsh Act detention did not toll Mr. Neuhauser's term of supervised release. Section 3624(e) provides that "[a] term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days."  Records indicate that Mr. Neuhauser was released from his sentence on June 6, 2007. Since Mr. Neuhauser was thereafter detained in connection with pending Adam Walsh Act proceedings, rather than "in connection with" his 1999 conviction, the plain language of the supervised release statute requires that his period of supervised release ran during his civil commitment.

In *United States v. Turner*, 689 F.3d 1117 (9th Cir. 2012), the Ninth Circuit recently held that a term of supervised release commences on an individual's originally calculated release date, and is not tolled by detention under the Adam Walsh Act.

In *Turner*, the defendant admitted to violating his supervised release conditions and was sentenced to an 8-month term of imprisonment and an additional 22-month term of supervised release.  *Id*.  The BOP released Turner on September 7, 2007.  *Id*. at 1119.  However, on that day the government filed a

-10-

certification under the Adam Walsh Act, and, though records confirm that a "good time credit release" occurred at noon, rather than departing FCI-Butner, Turner "received an assignment of 'A-Pre WA,' meaning that he was being detained pursuant to the Walsh Act's stay-of-release provision." *Id.* Turner was held for four years at FCI-Butner as a civil detainee, until a district court finally found that he did not meet the criteria for commitment under the Adam Walsh Act and ordered his release. *Id.* Turner argued that his supervised release began on September 7, 2007 and expired 22 months later. Id.

The Ninth Circuit first noted that "[r]esolution of this question requires us to consider the interplay among three different statutory schemes: 18 U.S.C. § 4248 (the stay-of-release provision of the Adam Walsh Act); 18 U.S.C. § 3624(a) (the definition of term of imprisonment); and 18 U.S.C. § 3624(e) (the supervised release statute)." *Id.* at 1118. With respect to the first relevant statute, the Adam Walsh Act, the Ninth Circuit opined that the statute "simply authorizes detention beyond the ordinary release date" and "contains no reference to a prisoner's term of imprisonment." *Id.* at 1120. In addition, in the second relevant statute, 18 U.S.C. § 3624(a), "'term of imprisonment' refers to the sentence imposed by the sentencing judge," as the language of the statute "dovetails with

-11-

§ 3621(a) [addressing the 'imprisonment of a convicted person'], which provides that '[a] person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the Bureau of Prisons *until the expiration of the term imposed* . . ." *Id.* at 1120 (emphasis in opinion but not in the original statute).

The opinion focuses on the third relevant statute, 18 U.S.C. § 3624(e). The court explained that "[i]n determining whether a particular detention constitutes 'imprisonment' for the purposes of § 3624(e), our cases have made it clear that custody of the Bureau of Prisons does not determine whether someone is imprisoned; instead, we have focused on the nature of the custody." *Id.* at 1121. Since Turner was detained pursuant to a civil statute, and not as the result of a criminal conviction, the court held that the tolling provision did not apply. *Id.*

Mr. Neuhauser's case is identical to the circumstances of the defendant in *Turner*. Like *Turner*, on his originally calculated release date at noon, Mr. Neuhauser was processed for good conduct time release. Like *Turner*, Mr. Neuhauser was readmitted for "Walsh Act review." And, like *Turner*, over four years later a federal district court judge found that Mr. Neuhauser did not meet the criteria for civil commitment under the Adam Walsh Act and ordered his release. These similarities

-12-

require a similar result: a finding that Mr. Neuhauser's supervised release commenced on June 6, 2007 and was not tolled by the government's unsuccessful application for his civil commitment under the Adam Walsh Act.

The Fifth Circuit also recently decided a case consistent with *Turner*. In *United State v. Garcia-Rodriguez*, 640 F.3d 129 (2011), that court held that a term of supervised release commenced on the day a criminal defendant was transferred to the custody of U.S. Immigrations and Customs Enforcement ("ICE") awaiting deportation, rather than the date of his deportation, as the government argued, and that the defendant's term of supervised release was not tolled by his ICE detention. The Fifth Circuit's ruling in that case hinged on "[t]he statutory language of subsections (a) and (e)" of Section 3624, which makes clear that imprisonment ends upon release from BOP custody, and a term of administrative detention—since it is not "in connection with a [separate] conviction"—does not toll that term of supervised release. Id. at 133. There, the Fifth Circuit stressed that "it is clear under federal immigration law that administrative detention of an alien is not the same as imprisonment for a crime." *Id*. Thus, *Garcia-Rodriguez* firmly supports the proposition that supervised release is not tolled by civil detention.

-13-

D.    **The Reasoning of *United States v. Johnson* Is Not Dispositive on this Issue.**

The lower court, consistent with some other courts that have addressed this issue, relied heavily on the reasoning of *United States v. Johnson*, 529 U.S. 53 (2000). J.A. at 117-121; *see, e.g., United States v. Mosby*, 719 F.3d 925, 930 (8th Cir. 2013), *Tobey v. United States*, 794 F. Supp. 2d 594 (D. Md. 2011). The *Johnson* ruling, however, predates the passage of the Adam Walsh Act. And, indeed, a review of the facts and circumstances of that case demonstrates that it is easily distinguishable from this case because *Johnson* only interpreted the meaning of confinement in the course of serving a criminal sentence, which is not at issue in this case.

In *Johnson*, the district court originally imposed a term of 171 months imprisonment, which consisted of three concurrent 51-month terms, to be followed by two consecutive 60-month terms for convictions under 18 U.S.C. § 924(c). *Id.* at 55. The defendant later succeeded in having the convictions under 18 U.S.C. § 924(c) vacated and his sentenced reduced to 51 months. *Id.* By that time, however, since the defendant had already served more than 51 months in prison, he argued that his term of supervised release should be reduced to account for the excess time he spent in prison. *Id.* The Supreme Court concluded that

-14-

based on the plain language of Section 3624, the defendant's
excess prison time could not be credited towards his term of
supervised release term.  *Id.* at 57-58.

Because Mr. Neuhauser is in a different posture from the
defendant in Johnson, the reasoning of that case is not
applicable here.  From June 6, 2007 until February 3, 2012, Mr.
Neuhauser was not incarcerated in connection with a valid
criminal sentence, unlike the defendant in Johnson. Indeed, for
that entire four and a half year period, Mr. Neuhauser was held
in BOP custody in connection with civil commitment proceedings
which bore no relation to his original conviction.

Moreover, unlike *Johnson*, Mr. Neuhauser was actually
"released," the event that triggers the commencement of a term of
supervised release under Sections 3624(a) and (e).  These
distinctions require that a fundamentally different analysis be
applied to Mr. Neuhauser's case.

### E.   Equitable Considerations Weigh Heavily in Favor of Termination of Mr. Neuhauser's Supervised Release on June 6, 2012.

Principles of fairness also weigh heavily in favor of
terminating Mr. Neuhauser's supervised release on June 6, 2012.
He was civilly committed for a full four and a half years after
his original release date, only to be later released on the
grounds that the government could not meet its burden under the

Adam Walsh Act.  Though he was not supervised by a probation officer during that time (a circumstance entirely within the control of the BOP, not Mr. Neuhauser), he was held in an incarcerative setting.  Requiring that he now serve an additional four and a half years under the close supervision of the United States Probation Office—particularly after a finding by Judge Boyle that Mr. Neuhauser was not a sexually dangerous person lawfully subject to civil commitment—is therefore both unfair and excessively punitive.

In its opinion, the lower court also cited the purpose of supervised release as one factor weighing against "[a]llowing [Mr. Neuhauser's] supervised release to begin running at the moment Defendant was transferred to civil commitment."[2]  J.A. at 122.  According to the lower court, supervised release has "rehabilitative benefits" and is "designed . . . to help persons in [Mr. Neuhauser's] position re-enter society."  *Id.*  Finding that Mr. Neuhauser "cannot have been aided in re-entering society while he was still in the custody of the Bureau of Prisons," and

---

[2]     In this passage and elsewhere in its opinion, the district court stated that Mr. Neuhauser was "civilly committed" under the Adam Walsh Act after the expiration of his criminal sentence of imprisonment. J.A. at 122. That is incorrect. Though Mr. Neuhauser was in civilly detained while Adam Walsh Act proceedings were pending, Mr. Neuhauser was never subject to "civil commitment" per the terms of that statute because the civil action was dismissed.

-16-

therefore that the legislative purpose of supervised release was not served by acknowledging an earlier release date, the court denied the motion.

The United States Probation Office's failure to reach out to Mr. Neuhauser during the pendency of his Adam Walsh Act proceedings should not militate in favor of the Appellee. That the United States Probation Office did not establish a rehabilitative program to assist individuals detained during the pendency of their Adam Walsh Act proceedings, thereby effectuating one of the purposes of the supervised release statute, should have no impact on the legal analysis of this Court. Certainly that agency *could have* reached out to Mr. Neuhauser during this four-and-a-half year period, and opted not to. The Bureau of Prisons and United States Probation Office themselves thwarted the rehabilitative purposes of supervised release. This court should not permit the government to simply stand on its own failings.

Finally, to the extent there is any ambiguity in resolving the interplay of the statutes at issue here, the rule of lenity weighs heavily in Mr. Neuhauser's favor. *Turner*, 689 F.3d at 1125.

-17-

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's denial of his motion to terminate supervised release as of June 6, 2012.

## REQUEST FOR ORAL ARGUMENT

Mr. Neuhauser hereby requests oral argument in this appeal because it is a case of first impression in this Circuit on an important question of statutory interpretation.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

/S/    Susie Hensler
SUSIE HENSLER
Appellate Attorney
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
(410) 962-3962

**CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS**

**TO BE INCLUDED IMMEDIATELY BEFORE THE CERTIFICATE OF SERVICE FOR ALL BRIEFS FILED IN THIS COURT.**

1.     This brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

___     Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times New Roman, NOT sans serif typeface such as Arial). Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, CG Times, 14 point):

_____

_X_     Twelve point, monospaced typeface (such as Courier or Courier New). Specify software name and version, typeface name, and pint size below (for example, WordPerfect 8, Courier, 12 point):

WordPerfect X4, Courier New, 12 point_____

2.     EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules or regulations, and the certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

___     _____ Pages (give specific number of pages; may not exceed 30 pages for opening or answering a brief of 15 pages for reply brief); **OR**

X      3,766 Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); **OR**

___     _____ Lines of Monospaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the work or line print-out.

_/S/_____Susie Hensler_____
Signature of Filing Party

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of August, 2013, I electronically filed the foregoing Brief of Appellant with the Clerk of Court using the CM/ECF System, which will send notice of such filling to the following registered CM/ECF users: Kristi O'Malley, Assistant United States Attorney, Office of the United States Attorney, 6500 Cherrywood Lane, Suite 400, Greenbelt, Maryland 20770.


/S/  Susie Hensler
SUSIE HENSLER
Staff Attorney